# CHARLESTON.

NATHAN GOFF, INFANT ETC. v. CLARKSBURG DAIRY COMPANY.

Submitted April 14, 1920.    Decided April 20, 1920.

1.    MASTER AND SERVANT—*Driver Returning from Luncheon May be Acting Within Scope of Employment.*

A jury may properly find that an injury negligently inflicted upon a person by a motor truck driven by a servant of its owner, while returning from his luncheon agreeably to his usual custom and practice assented to by the master, was a result or an incident of an act done by the servant within the scope of his employment, for which the master is liable.    (p. 239).

2.   MUNICIPAL CORPORATIONS—*Driver of Vehicle Passing one on Which Children Are Riding Must Take Reasonable Precautions.*

The driver of one vehicle following another on the rear of which there are children whose attitudes indicate purpose or liability suddenly to step off of it, desiring to pass such other, is bound to adopt and use reasonable precautions for the safety of the children, such as vigilance, warning and reduction of speed, if necessary.   (p. 240).

3.   SAME—*Driver Following Vehicle on Which Children Are Riding Need Not be Able to Stop Instantly.*

But he is not required to have his car under such control, in such cases, that he may stop it instantly, upon a sudden and unexpected intrusion of a child so situated, upon the path or course of the car and immediately in front of it.   (p. 242).

4.   SAME—*Sudden Intrusion of Child in Path of Vehicle Does Not Necessarily Preclude Liability.*

Sudden intrusion of a child so situated, upon the path or course of a passing vehicle, does not necessarily preclude liability of the driver of such vehicle for injuries resulting, since both parties have the right to use the highway and are under duty to exercise care and caution.   (p. 243).

5.   NEGLIGENCE—*Child Eight Years Old May be Guilty of Contributory Negligence in Use of Highway.*

A child eight years old may be guilty of negligence in the use of a highway, constituting the proximate cause of his own injury, or of contributory negligence in a transaction in which he suffers injury, barring right of recovery of damages therefor; and, if, in a trial of an action for such damages, there is evidence tending to prove such negligence or contributory negligence, a prayer for an interrogatory requiring the jury to find whether it existed or not should be granted.   (p. 243).

6.   SAME—*Child Eight Years Old is Presumed Incapable of Appreciating Danger.*

In the trial of such a case, it is not error to instruct the jury that there is a presumption of incapacity on the part of an infant eight years old to appreciate danger, which the defendant must rebut by evidence or circumstances disclosed by the trial.   (p. 243).

Error to Circuit Court, Harrison County.

Action by Nathan Goff, infant, etc., against the Clarksburg

Dairy Company. Judgment for plaintiff, and defendant brings error.

*Reversed and remanded.*

*J. E. Law* and *A. F. McCue,* for plaintiff in error.
*J. Philip Clifford,* for defendant in error.

POFFENBARGER, JUDGE:

The $600.00 judgment complained of on this writ of error was recovered as damages for an alleged negligent injury of a boy about eight or nine years old, on a business street of the City of Clarksburg, by a motor truck belonging to the defendant and driven by one of its employees, while returning from his luncheon to the defendant's place of business, agreeably to his usual custom and with the knowledge and consent of his employer.

One ground of defense was lack of relation of master and servant between the owner and driver, on the occasion of the injury. Defendant's general manager admitted a grant of permission to the servant to use the car as he was using it at that time, but he says it was granted only by way of accommodation to the servant. In this connection, however, he said he tried to accommodate his employees, for he had occasion to ask favors of them, labor being scarce and hard to get. As the injury occurred on the return trip, some authorities would hold the relation to have been restored, if interrupted by the trip to luncheon. *Vanneman* v. *Walker Laundry Co.,* 150 S. W. 1128; *Graham* v. *Henderson,* 98 Atl. 870; *McKiernan* v. *Lehmaier,* 81 Atl. 969; *Rudd* v. *Fox,* 112 Minn. 477. Whether the proposition is legally sound, we do not stop to inquire. By the great weight of authority, the relation of master and servant was not so clearly excluded by the circumstances disclosed here, that a jury could not find and affirm its existence. *Reynolds* v. *Denholm,* 213 Mass. 576; *Bourne* v. *Whitman,* 209 Mass. 155. The defendant's consent to the use made of the truck is a large element in the case. When that appears, the jury, if not the court, may say the relation existed. *Steffen* v. *McNaughton,* (Wis.) 124 N. W. 1016, 26 L. R. A. (N. S.) 382. It is a circum-

stance tending to prove the use permitted was within the informal contract of employment.

Another ground of defense is that the injury was an unavoidable accident, if not the result of the plaintiff's own negligence and carelessness. This contention is based upon the theory that the plaintiff was riding on the rear of a bakery or bread wagon which the defendant's truck had occasion to pass, and, just as it started to pass, the boy got down in front of it, at such time and in such manner that there was no opportunity to avoid contact with him. But this hypothesis is contradicted. The testimony of the boy who answered the questions propounded to him distinctly and intelligently, denies that he saw any wagon at the time and place of the injury and describes his journey along the sidewalks and across the street until he was struck. Besides, he asserts positively that he had not been on any wagon. No other witness for the plaintiff knew whether he had been or not. One witness for the defendant says he saw the boy on the wagon and saw him step off in front of the truck. The driver did not see him until he suddenly discovered him in front of the truck, and so near that he could not stop it in time to prevent injury; but he says he had come from the direction of the wagon and was crossing to the north side of the street, that there were boys on the wagon and that he saw no boys on the south side of the street, other than those on the wagon. A pool or large spot of blood near the north curb is relied upon as matter of contradiction of the defendant's theory and corroboration of the plaintiff's. The boy was struck on the forehead by the right front fender and half or more of his scalp cut and torn loose, but he fell between the wheels and the car passed over him without further injury. The blood spot probably locates the position of his head while he was down. One witness says the truck was north of the center of the forty-foot street, when it struck the boy. There was conflict in the evidence also as to whether the driver gave any warning of his approach.

If the defendant's theory that the boy had been on the wagon, could be accepted as having been conclusively established, it would not necessarily negative liability; for, if, while driving along behind a wagon, which he intended to pass, the driver saw

children riding on the rear of it and liable to step off at any point, it was his clear duty to keep his car under such control and give such warning as would constitute reasonable care and precaution for their safety.  He was bound to consider their tenderness of age and the indiscretion and improvidence peculiar to such age, as factors in the situation, calling upon him for greater caution than would be necessary on the discovery of adults in the same situation.  He admits he did not see the boy step off of the wagon, if he was on it.    Nor does he say he won the attention of those who were on it, or that he had any assurance that they were aware of his approach.  On this point, he says no more than that he sounded his horn two or three times at some point, before he started to pass.  Of course he had to give some attention to other parts of the street, but it cannot be held as matter of law, that he could not do that and, at the same time, take reasonable precaution for the safety of the children on the wagon.  That, as well as what precautions were reasonably necessary under the circumstances, was a question for the jury.  If, in the belief of the jury, based upon all the circumstances disclosed and their findings upon conflicting evidence, the driver did not exercise requisite care and prudence, the injury was manifestly not the result of a mere accident.  Of course, a boy of the age of the plaintiff could deliberately inflict injury upon himself and contribute to the negligence of another resulting in injury, and might be guilty of contributory negligence, as matter of law, *Schoonover* v. *B. & O. Railroad Co.*, 69 W. Va., 560, but whether he was guilty of such negligence is nearly always a question for the jury.  Obviously it was in this case.  In our opinion, the evidence is sufficient to sustain the verdict.

From what has been said it is clear that the court did not err in submitting to the jury, in plaintiff's instruction No. 1, an inquiry as to whether the driver could have seen the boy in time to avoid injury to him.  The fact that he could not avoid the injury after he saw the boy is not conclusive.    Lack of evidence is likewise the basis of the criticisms of plaintiff's instructions Nos. 4 and 5, the former submitting an inquiry as to whether the driver maintained a proper lookout for persons in danger from his car, and the other an inquiry as to whether

the driver could have seen the boy, if he had been vigilant. There was ample evidence to justify both. Plaintiff's instruction No. 6 declares the presumption of incapacity of an infant eight years old to comprehend danger. It is needless to cite authority for the existence of the presumption. Plaintiff's instruction No. 7 was objected to on the ground that it authorizes an award of damages on the theory of permanent injury. There is evidence of slight impairment of sight and hearing and also of nervousness, which fully justified this instruction.

But the court committed manifest and prejudicial error in the giving of plaintiff's instruction No. 2, in which the jury were told the defendant's driver was bound to run the car at a rate of speed that "would permit of absolute control of such vehicle at the time in question in this case." If the defendant's theory as to the position and conduct of the boy is correct, there was no duty on the part of the driver to have his car under absolute control on the occasion of the injury, for, in that case, the boy stepped immediately in front of the car which was running at a lawful rate of speed. No driver could be expected to anticipate, and be prepared for, such an emergency, by having his car under such control as to enable him to avoid injury to the intruder. The statute invoked in support of the instruction, sec. 118 of ch. 66, Acts of 1917, sec. 119, ch. 43, Barnes Code of 1918, does not say that, nor does it mean it. Its very terms contradict the theory of the instruction as applied here, saying a car shall not be run at a greater rate of speed than will permit absolute control of such vehicle at all times, nor in certain places at a greater rate of speed than will permit the vehicle to be brought to "a full stop in one-half the distance that the road is in full view, the objective point being construed as the distance viewed." Not a word in the statute suggests duty to make a full stop within half the distance between the car and a sudden and unexpected intruder upon the road or upon the part of the road on which a car is running. "Absolute control at all times" means such control as makes the operation of the car safe, in view of, and as determined by, its apparent situation and surroundings. A car is in absolute control, while running at a reasonably high rate of speed on a smooth, straight, unobstructed

road. To be under absolute control, it need not be susceptible of instant stoppage. It is the full stop provision, not the "absolute control" phrase, that is relied upon in the argument, and it clearly has no application. This instruction was erroneous and prejudicial, because it called for or justified a verdict for the plaintiff, even though the injury may have been the result of inevitable accident, for it told the jury the defendant was negligent in its failure to run its car so it could be instantly stopped on the sudden intrusion of the boy upon its course, and, therefore, liable.

The court properly overruled objections to questions seeking information as to the consequences of the injury and another to the admission of the answer to one of them. The evidence tending to show slight permanent injury was admissible, even though it may not have been sufficiently probative to sustain a large allowance in the verdict for such injury.

The court's modification of defendant's interrogatory No. 1, so as to make it include a finding as to whether the servant was using the truck "in furtherance of the business of his employer," was proper. If it was so used with the defendant's consent, it was necessarily used within the scope of the servant's employment.

But there was error in the refusal to propound defendant's interrogatory No. 2, requiring the jury to find whether the plaintiff was negligent in attempting to cross the street, under the circumstances, and, if so, whether his negligence was the proximate cause of his injury. That he could have been guilty of negligence, there can be no doubt. Almost any boy of his age knows the danger of stepping in front of a moving automobile. "Numerous decisions declare that in cases of injury occurring upon highways and railroads, failure of a child to exercise such care, caution and foresight as is ordinarily possessed and exercised by children of his age will bar recovery." *Schoonover* v. *B. & O. Railroad Co.* cited.

For the errors noted, the judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*