453 S.E.2d 345

**Larry ESTEP, Plaintiff Below, Appellee,**

**v.**

**Dan BREWER and Sonja Busic,**
**Defendants Below,**
**Appellants.**

**No. 22153.**

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 21, 1994.

Decided Dec. 9, 1994.

J.W. Feuchtenberger, Stone, McGhee, Feuchtenberger & Barringer, Bluefield, for appellants.

William Flanigan, Sanders, Austin, Swope & Flanigan, Princeton, for appellee.

PER CURIAM:

This case is before this Court upon the appeal of the May 21, 1993, order of the Circuit Court of Mercer County, West Virginia. The jury found that appellants, Dan Brewer and Sonja Busic, had defamed the appellee, Larry Estep, and awarded the appellee $250,000 in damages ($200,000 in compensatory damages and $50,000 in punitive damages). On appeal, the appellants ask that this Court vacate the final order of the circuit court. For the reasons set forth herein, the order of the circuit court is affirmed.

I

The appellee was employed as an assistant principal at Bluefield High School in Mercer County, West Virginia. The appellants are husband and wife, and appellant Brewer was a school bus driver for Mercer County. The couple's son, Frank Brewer, was a special education student at the high school.

In the spring of 1987, it had been alleged that Frank was involved in the wrongful acquisition of a teacher's manual with three other students. The appellee recommended that all four students be suspended from school for five days.

The appellants protested this disciplinary action. The appellants asserted that their son had an Individualized Education Plan (hereinafter "IEP"). This plan prescribes, among other things, requisite disciplinary measures, and the proposed suspension was in excess of the guidelines provided within the IEP. The appellee asserts that once he discovered that Frank had an IEP, he consulted the plan as well as other concerned colleagues and parents and modified the mode of discipline in accord with the IEP. All four students were to receive the same form of punishment, in-school detention. This incident apparently ignited the battle between the two parties.

The next encounter the parties had was in the fall of 1987. A problem occurred involving appellant Brewer and some other students while the appellant was acting in his capacity as a school bus driver. It is unclear as to what exactly took place, but the appellant claimed that certain students, all being African–Americans, misbehaved. As a result, the appellee claims that the appellant left the students stranded at a bus stop. The appellee believed that the appellant improperly handled the situation. When the appellant was not reprimanded for his actions, the appellee complained that the students were being singled out due to their race.

Appellant Brewer filed a grievance with the Mercer County Board of Education listing difficulties he had experienced with the appellee. The appellee suggests that this

was the beginning of a malicious and defamatory campaign to have him fired. The appellants, as set forth by the appellee, sent the grievance form to the media while copies were transmitted to other private individuals.

The appellants filed a second retaliatory grievance. In support of that grievance, appellant Busic filed several letters. The letters accused the appellee of, among other things, violating civil rights laws, being emotionally immature, being totally without ethics, acting negligently and cruelly towards students and threatening the appellants. These letters were also sent to the Mercer County Board of Education and state and federal agencies along with the warning that each individual would be held responsible for condoning the appellee's actions. As further noted by the appellee, letters were written by the appellants and sent to a member of the Mercer County Board of Education stating that the media had been notified of the problems the appellants were having with the appellee and the school system and threatening to take legal action against the appellee.

On July 5, 1988, the appellee filed this defamation action with the circuit court against the appellants. The trial was held regarding this matter on May 13 and 14 of 1993. The jury ultimately returned a verdict awarding the appellee $250,000 in damages, including $150,000 for mental anguish, worry and distress and $50,000 for damages to the appellee's reputation and $50,000 in punitive damages. The trial court entered an order on May 21, 1993, confirming the jury's award. It is from this order of the trial court that the appellants appeal to this Court.

## II

The appellants raise numerous assignments of error on appeal. However, we will address two assignments which raise questions as to whether it was proper for the jury to decide the appellee's status, that is, whether the appellee was acting as a public person or a private person for purposes of this case and whether the verdict was appropriate. The remaining assignments of error are without merit or were inadequately briefed. *See State v. Flint,* 171 W.Va. 676, 679 n. 1, 301 S.E.2d 765, 768 n. 1 (1983); *Addair v. Bryant,* 168 W.Va. 306, 320, 284 S.E.2d 374, 385 (1981).

The appellants primarily argue that it was error for the trial court to submit to the jury the question as to whether the appellee was a public person or a private person for purposes of this defamation case.

The critical analysis in this case is whether or not the appellants preserve the error of which they now complain. The record denotes the exchange that took place between the trial court and counsel for the appellants when counsel was arguing a motion to dismiss after the close of the appellee's case:

> Mr. Feuchtenberger: First, the defendants would argue to the Court that Larry Estep is a public figure—
>
> . . . .
>
> The Court: I'm going to stop you right there. First of all, I don't find that there is sufficient evidence to find that he is a public official and the jury will decide whether he is a public figure, which they could find that he is or they could find that he is not a public figure. So, I'm going to leave it up to the jury to find whether he is a private person or not.

Mr. Feuchtenberger then went on to his next issue in his argument in support of dismissing the case and the following exchange occurred:

> The Court: The Court finds that there is sufficient evidence in this case in which the jury could find that there were alternatives available to private persons or public persons, defamatory statements made to third persons of a malicious nature or not of a malicious nature. I'm going to tell you something right now, as it stands at the present time, if the jury finds that he is a public figure I probably won't let the verdict stand unless the evidence changes.
>
> Mr. Feuchtenberger: Yes, Your Honor.

Thereafter, the record indicates that the jury was submitted an interrogatory by the trial court. Specifically, the interrogatory asked

the jury to decide whether the appellee was a public person or a private person.[1]

The record also indicates that the jury was instructed on the standards of proof required of a public person and a private person in a defamation action. Both parties submitted and the trial court presented instructions to the jury on the following relevant issues: the burden of proof a private person must satisfy in order to prevail in a defamation action;[2] the burden of proof a public person must satisfy to prevail in a defamation action, including the definition of actual malice;[3] and, guidelines setting forth when a punitive damage award is appropriate.[4]

1. The jury interrogatory reads:

The Court instructs the jury to answer the following interrogatory:
We the jury find that the plaintiff, Larry Estep, was a public figure at the time the statements were made.

_____
[signature line to be signed by the jury foreperson]
We the jury find that the plaintiff, Larry Estep, was a private person at the time the statements were made.
/s/ James Jones
[jury foreman]

2. The appellants' instruction on this issue reads:

In West Virginia, the essential elements for a successful defamation action brought by a private individual are: (1) defamatory statement, (2) a nonprivileged communication to a third party, (3) falsity, (4) reference to the plaintiff, (5) at least negligence on the part of the publisher, and (6) resulting injury. *Crump v. Beckley Newspapers, Inc.*, [173 W.Va. 699,] 320 S.E.2d 70, (1984).
The appellee's coinciding instruction reads, in part:
The Court instructs the jury that, in order for a person to succeed in a claim that he has been libeled or slandered, he must prove, more probably than not, that his reputation has been damaged by an allegation of dishonesty, criminality, moral turpitude, racism or other conduct and actions that tend to bring shame, contempt, ridicule or scorn upon him; that the statements were made, either in writing or verbally, to a third person; that the statements assigning these characteristics to the injured party were false or misleading; that the person making the oral or written statement failed to exercise ordinary care in discerning the truthfulness of the material being communicated and transmitted; and that emotional or reputational injury resulted as a result of the false or misleading communication of the information.

3. The appellants' instruction on this issue reads, in part:

The Court instructs the jury that in W.Va. the essential elements for a successful defamation action brought by a public figure are:
First, that the defendant published written statements as opposed to oral statements;
Second, that the written statements constituted libel as that term is defined for you in these instructions;
Third, that the publication was 'of and concerning the plaintiff;'
Fourth, that the publication was communicated to third persons;
Fifth, that the publication was false in some material particular; and
Sixth, that the written statements were published with actual malice, as that term is explained in these instructions.
The burden is on the plaintiff to prove the first five of these elements by a preponderance of the evidence.
The burden is stricter with regard to the sixth element—the element of actual malice. The plaintiff has the burden of establishing by clear and convincing evidence that the publication was made with actual malice.
... *New York Times Co., v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), ... *Curtis Publ. Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967)[.]
The appellants' actual malice instruction reads, in part:
The Court instructs the jury that the term 'actual malice,' which must be established by clear and convincing evidence to warrant a verdict for plaintiff, means that defendant published false and defamatory statements with knowledge that they were false or with a reckless disregard of whether they were true or false.... *Sprouse v. Clay Communication, Inc.*, [158 W.Va. 427,] 211 S.E.2d 674 (1975)[.]
The appellee's instruction reads, in part:
The Court instructs the jury that a public figure is a person who, by his accomplishments, fame, or mode of living, or by adopting a profession or calling which gives the public a legitimate interest in his doings, his affairs and his character have become a public person.
The law establishes a higher standard than simple negligence if a public figure, ..., has been the subject of libelous or slanderous statements.... In order to recover in these situations, the injured party must show that the libelous or slanderous statements or writings were made with actual malice toward him or with such recklessness as to show a total disregard of the truth. A person acts with 'actual malice' when he is motivated by a sense of hate, ill-will or revenge against the party he is making the statements or writings about and communicates the false or misleading information in hopes of doing injury to the person or reputation of the subject of the comment.

4. The appellants' instruction reads:

■ Because our analysis in this case is focused upon the procedural aspects of what occurred or failed to occur at the trial court, we are guided by the Rules of Civil Procedure. Rule 46 of the *West Virginia Rules of Civil Procedure* states, in relevant part:

Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor[.]

We acknowledged the purpose of this rule in *Konchesky v. S.J. Groves & Sons Co.*, 148 W.Va. 411, 415, 135 S.E.2d 299, 302 (1964): "It will be noted that this Rule clearly shows that formal exceptions are unnecessary, but parties must still make it clear that they object to the ruling or order of the court in order to preserve such matter for appeal." *See Bennett v. 3 C Coal Co.*, 180 W.Va. 665, 672, 379 S.E.2d 388, 395 (1989). This principle was recognized in a more general sense originally in syllabus point 1 of *State Road Commission v. Ferguson*, 148 W.Va. 742, 137 S.E.2d 206 (1964): "Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal."

■ We have carefully examined the record. While we do not endorse the submission of such interrogatory by the trial court, the record does not indicate that the appellants objected to the presentation of the interrogatory at trial. Furthermore, our review does not reveal any indication of any objection whatsoever to the court's giving of

instructions to the jury on the different standards of proof. *See* Rule 51 of the *W.Va. R.Civ.P.* and syl. pt. 1, *Roberts v. Powell*, 157 W.Va. 199, 207 S.E.2d 123 (1974).

We have cautioned in syllabus point 6 of *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976): "This Court will not consider an error which is not preserved in the record nor apparent on the face of the record." The record in this case is at times vague and unclear, and we will not make assumptions to supplement a substandard record. Thus, in the absence of an adequate record, this Court cannot consider the appellants' assignment of error.

■ This leads us to address whether the damages awarded for such defamatory conduct were reasonable and proportional in light of all the evidence. In resolving this issue, we are guided by syllabus point 5 of *Orr v. Crowder*, 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied*, 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984):

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

■ The jury was given a verdict form and asked to pencil in the damage award for emotional distress, damage to reputation and punitive damages; the awards were $150,000,

---

The Court instructs the jury that damages recovered in actions of this character, are of two classes. First, actual or compensatory damages, which embrace loss of reputation, shame, mortification and injury to the feelings. Second, exemplary or punitive damages, which are damages that may be awarded by the jury where they believe that the slanderous and insulting words were used and spoken by the defendant of and concerning the plaintiff are falsely, maliciously, willfully and deliberately spoken of and concerning the plaintiff by the defendant. *Michaelson v. Turk*, 79 W.Va. 31, 36, 90 S.E. 395 (1916)[.]

The appellee's instruction reads, in part:

The Court instructs the jury that, in addition to compensatory damages, it is within the jury's province to award punitive damages against Dan Brewer and Sonja Busic.... In order to award such damages against Dan Brewer and/or Sonja Busic, you must be persuaded by the evidence that their actions were done willfully, wantonly, or with such recklessness as to evince a conscious disregard for the rights of Larry Estep.

$50,000 and $50,000, respectively. An examination of the record shows that the issues were properly before the jury, sufficient evidence was presented and the jury, after weighing all the evidence, found in favor of the appellee.

The appellants asserted, and maintained throughout the proceedings in this case, that the appellee was a public person for purposes of this litigation. However, the appellants' primary contention is that it was error for the trial court to submit an interrogatory to the jury and permit the jury to decide whether the appellee was a public person or a private person. As noted, the record does not show an objection to that interrogatory. Upon the above, we believe the evidence was sufficient to support the verdict that the appellee had been defamed and such defamation was done maliciously.

In addition to the reasoning set forth above, the Court has also reviewed the entire record pursuant to our responsibility, under *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to be a judge of both the facts and the law, and we conclude that the jury's factual conclusion is clearly correct. *See Hinerman v. Daily Gazette Co.,* 188 W.Va. 157, 423 S.E.2d 560 (1992) and *Dixon v. Ogden Newspaper, Inc.,* 187 W.Va. 120, 416 S.E.2d 237 (1992).

In view of the record in relation to the assignments of error raised by the appellants, the jury was apprised of the more rigorous standard of proof required of a public person and the less demanding standard of proof required of a private person. *See New York Times Co., supra* and *Crump v. Beckley Newspaper, Inc.,* 173 W.Va. 699, 320 S.E.2d 70 (1983). *See also* n. 2 & 3, *supra.* Included within this more rigorous standard for a public person, the jury was instructed on the definition of actual malice and the requisite standard of proof. *See* n. 3, *supra* and *New York Times Co., supra.* The jury obviously found that the appellants acted maliciously as reflected by the punitive damage award. *See* n. 4, *supra.* Therefore, regardless as to how the jury categorized the appellee, a public person or a private person, the appellee prevailed under either standard.

Thus, for the reasons set forth herein, there is no reversible error in this case. This Court hereby affirms the order of the Circuit Court of Mercer County.

Affirmed.

BROTHERTON, C.J., did not participate.

MILLER, J., Retired, sitting by temporary assignment.